UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ROBERT H. GRAVATT, III,

    Plaintiff,

v.

MONTGOMERY COUNTY, MARYLAND,
CAROLINE E. HEADEN,
EDWARD B. LATTNER and
RASHEIM R. SMITH,

    Defendants.

Civil Action No. TDC-22-1296

## MEMORANDUM OPINION

Plaintiff Robert H. Gravatt, III has filed a civil action against Defendants Montgomery County, Maryland and three Montgomery County employees alleging deprivations of his constitutional rights and violations of state law based on the issuance of a Disruptive Behavior Order against him following a May 2021 incident at the Bethesda Outdoor Pool, a public pool in Bethesda, Maryland. Defendants Montgomery County ("the County"), Caroline E. Headen, Edward B. Lattner, and Rasheim R. Smith have filed a Motion to Dismiss, which Gravatt now opposes. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion to Dismiss will be GRANTED.

## BACKGROUND

Gravatt asserts the following facts in the Amended Complaint, which the Court accepts as true for purposes of deciding this Motion. On May 29, 2021 at approximately 2:40 p.m., Gravatt entered the Bethesda Outdoor Pool, a public pool operated by the Montgomery County Department

of Recreation. Gravatt used a season pass he had purchased that allowed him to use the Bethesda Outdoor Pool as well as other pools operated by the County. Because of ongoing limitations related to the COVID-19 pandemic, patrons were required to reserve a dedicated swimming time. Gravatt's appointment was at 4:00 p.m.

Gravatt walked over to the pool's edge and placed a plastic thermometer into the water. Defendant Rasheim R. Smith, who identified himself as an employee at the pool, instructed Gravatt to remove the thermometer from the pool. Gravatt refused and insisted that Smith did not in fact work at the pool because Gravatt had never seen him before. Smith made three requests to Gravatt to remove the thermometer, each of which he refused. Smith then walked away. Upon taking the temperature of the water in the pool, Gravatt left the facility.

Two days later, on May 31, 2021, Gravatt appeared again at the Bethesda Outdoor Pool. He was denied entry by Smith and a Montgomery County police officer, who served him with a Disruptive Behavior Order ("the Order"). The Order notified Gravatt that he was to be denied access to Montgomery County facilities for a period of 90 days due to "stalking behavior towards a lifeguard and putting a device into the pool and refusing to take the device out." Am. Compl. ¶ 13, ECF No. 19. The Order included a section entitled "Review Rights" which notified Gravatt that, as a recipient of the Order, he was entitled under the Montgomery County Code § 32-19C (Disruptive Behavior—Public Facilities) to a Review Meeting the next business day, and that he could request an alternative date for the Review Meeting. Order at 1, Mot. Dismiss Ex. 2, ECF No. 32. Gravatt signed the Order to acknowledge that he had received it.

The Review Meeting was held on June 4, 2021. Edward Lattner, the Chief of Government Operations for the Montgomery County Attorney, presided over the meeting. Smith and his supervisor, Caroline Headen, also attended the meeting. At the meeting, Lattner entered into the

record various emails, compiled by Smith and Headen, which contained the accounts of several lifeguards detailing the factual basis for the allegation that Gravatt had displayed stalking behavior. According to Gravatt, when he asserted that the stalking allegations related to a claim of a criminal violation and were not a proper subject of the Review Meeting, Lattner dismissed that claim. Gravatt argued that he had not violated the rule against disruptive behavior by placing a thermometer in the pool. At the conclusion of the Review Meeting, Lattner amended the Order to bar Gravatt from the Bethesda Outdoor Pool only, rather than all Montgomery County recreation facilities.

Gravatt filed suit in this Court on May 31, 2022. On July 22, 2022, Gravatt filed an Amended Complaint, which alleges a total of 11 counts. Count 1 asserts a claim against Smith and the County under 42 U.S.C. § 1983 for a violation of Gravatt's right to equal protection of the law under the Fourteenth Amendment to the United States Constitution and for retaliation in violation of the First Amendment. Count 2 alleges a state law claim of libel against Smith and the County. Count 3 asserts a claim against Lattner under § 1983 for violations of Gravatt's Fourteenth Amendment rights to equal protection of the law and due process of law. Count 4 alleges a state law claim of gross negligence against Lattner. Count 5 alleges a state law claim of libel against Lattner. Count 6 asserts a claim against Headen and Smith for a conspiracy to deprive Gravatt of his constitutional rights, in violation of 42 U.S.C. § 1985. Count 7 alleges a § 1983 claim against Headen for a violation of Gravatt's Fourteenth Amendment right to equal protection of the law and for retaliation in violation of the First Amendment. Count 8 alleges a § 1983 claim against the County for a violation of Gravatt's right to equal protection of the law based on its denial of a discrimination complaint he filed about the May 29, 2021 incident with the Maryland Commission on Civil Rights on July 23, 2021. Count 9 alleges a state law claim against the County for breach

of contract. Count 10 alleges a § 1983 claim against the County for failure to train its employees. Count 11 seeks a declaratory judgment by this Court that Montgomery County Code § 32-19C is facially unconstitutional.

## DISCUSSION

In their Motion to Dismiss, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) based on their assertion that the Amended Complaint fails to state a plausible claim for relief on any of the 11 counts. Defendants Smith, Headen, and Lattner (collectively, the "Individual Defendants") also assert that they are entitled to qualified immunity from the § 1983 claims against them. Lattner also asserts statutory immunity from suit due to his status as a County official who was acting within the scope of his employment.

### I.   Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

4

With the Motion, Defendants have submitted multiple exhibits. Ordinarily, in assessing a Rule 12(b)(6) motion, a court must limit its review to the complaint and any attachments to that pleading. Fed. R. Civ. P. 12(d); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). However, courts are permitted to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, the Court will consider the Disruptive Behavior Order and the Montgomery County Recreation Swimming Pool Rules and Regulations ("the Pool Rules") as integral to the complaint because they are explicitly referenced in the Amended Complaint and Gravatt does not challenge their authenticity. The Court will not, however, consider Defendants' remaining exhibits, which do not meet this standard.

## II.    The County

The Court first addresses the federal claims asserted under § 1983 against the County, as alleged in Count 1 (equal protection and retaliation), Count 8 (equal protection), and Count 10 (failure to train).

The United States Supreme Court has held that a municipal government may not be held vicariously liable for the actions of its employees or agents and may be held liable under § 1983 only if the alleged deprivation of federal rights was the result of a custom or policy of the municipal government. *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). Here, Gravatt has alleged constitutional violations arising out of a single incident—the May 29, 2021 incident—and its aftermath. Gravatt has not plausibly alleged that the claimed Fourteenth Amendment and First Amendment violations arising out of that incident, the Review Meeting, and

the County's consideration of his discrimination complaint were the result of any articulable custom or policy of the County. The Court will therefore dismiss the claims against the County in Count 1 and the entirety of Count 8, which is asserted only against the County.

As for Count 10, the Supreme Court has held that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983" against a municipal government. *City of Canton Ohio v. Harris*, 489 U.S. 378, 387 (1989). Such a claim is viable only if "the failure to train amounts to deliberate indifference to the rights of persons with whom" the municipal officers come into contact. *Id.* at 388. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389. Thus, such a claim requires more than a showing that a particular employee was unsatisfactorily trained, or that there was an inadequate training program. *Id.* at 390; *Connick v. Thompson*, 563 U.S. 51, 63, 68 (2011) (stating that "showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability"). Rather, it requires a showing that there was a "deliberate" or "conscious" choice by the municipal government not to provide the training, and that the need for more or different training was so obvious, and the inadequacy so likely to result in a violation of constitutional rights, that the decisionmakers can be deemed to be deliberately indifferent to the need. *Canton*, 489 U.S. at 389-90. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61. The deficient training must be the actual cause of the alleged injury. *Canton*, 489 U.S. at 391.

Here, Gravatt has failed to allege a plausible § 1983 claim based on a failure to train. The Amended Complaint offers no details about the training which was or was not allegedly provided to the Individual Defendants and provides no facts that could support the conclusion that any of them were not properly trained, that the County acted with deliberate indifference in failing to train, or that there is any causal link between any failure to train and the alleged deprivation of rights. Rather, Gravatt argues only that because his rights were infringed, there must have been some failure to train which caused the alleged infringement. Under *Canton*, however, the link between cause and effect must be closer than the conclusory reasoning which Gravatt employs. *Id.* at 391 ("For liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury."). The Court will therefore dismiss Count 10 for failure to state a claim.

## III. Equal Protection

In Counts 1, 3, and 7, Gravatt alleges that the Individual Defendants each violated his Fourteenth Amendment right to equal protection of the law. In Count 1, Gravatt claims that Smith violated this right when he expelled him from the pool based on a discriminatory motivation. In Count 3, he argues that Lattner's actions in presiding over the Review Meeting and upholding the Order deprived him of equal protection. In Count 7, he asserts that Headen's enforcement of the Order was discriminatory and thus in contravention of the Equal Protection Clause.

A plaintiff asserting an equal protection claim must allege "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see Washington v. Davis*, 426 U.S. 229 (1976) ("The invidious quality of a law claimed to be . . . discriminatory must ultimately be traced to a . . . discriminatory purpose."). "The

7

'similarly situated' standard requires a plaintiff to identify persons materially identical to him . . . who ha[ve] received different treatment." *Applegate, LP v. City of Frederick*, 179 F. Supp. 3d 522, 531 (D. Md. 2016) (citation omitted). Where a plaintiff alleges differential treatment or classification on the basis of some protected characteristic, such as race or national origin, the classification will be examined using a form of heightened scrutiny. *Morrison*, 239 F.3d at 654. In the absence of a claim of discrimination based on such a protected class or an allegation of a violation of a fundamental right, the differential treatment is presumed to be valid and will be sustained if "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319-20 (1993); *Morrison*, 293 F.3d at 654. Under this rational basis standard, the classification "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller*, 509 U.S. at 320 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).

Here, Gravatt generally alleges that the Individual Defendants "arbitrarily and capriciously" and "intentionally" discriminated against him by excluding him from the Bethesda Outdoor Pool. Am. Compl. ¶¶ 29, 52, 82. He provides no allegations supporting a claim that he was treated differently than other similarly situated individuals, nor does he clearly identify the basis upon which he was treated differently. The specific counts alleging § 1983 equal protection violations (Counts 1, 3, and 7) do not identify a basis for the alleged intentional discrimination. In Count 6, which alleges a "[c]onspiracy to deprive plaintiff of rights or privileges" in violation of 42 U.S.C. § 1985, Gravatt asserts that he is a "member of a class of swimmers who are sensitive to cold water temperatures" and that "[m]embers of Plaintiff's class includes senior citizens (as is Plaintiff), people with health issues, people with physical injuries, people with certain disabilities

8

and even some swimmers who do not own full-body rubber wetsuits (similar to Plaintiff's) which are often needed in cold conditions." Am. Compl. ¶ 71. Gravatt also references age and disability in Count 8, the § 1983 claim against the County. Viewing the allegations in the light most favorable to the plaintiff, the Court construes Gravatt's equal protection claims as alleging that he has been subjected to intentional discrimination based on his status as a senior citizen and as someone with a disability or sensitivity that causes difficulty swimming in cold water, whether based on a shoulder injury or otherwise.

For purposes of an equal protection claim, neither age nor disability is a suspect class subject to strict or intermediate scrutiny. *See Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 313-14 (1975) (holding that classifications based on age are not subject to strict scrutiny and are instead subject to rational basis review); *Brown v. N. Carolina Div. of Motor Vehicles*, 166 F.3d 698, 706 (4th Cir. 1999) (holding that classifications based on disability are subject to rational basis review). Thus, the analysis proceeds under rational basis review.

Here, Gravatt's equal protection claims fail for two reasons. First, he has alleged no facts supporting a plausible claim that the decision to issue the Order was made with the intent to discriminate against him based on his age or any disability. At no point did any of the Individual Defendants reference Gravatt's age or possible disability, and Gravatt has provided no allegations showing that younger individuals or persons without a disability or aversion to cold water were intentionally provided with more favorable treatment. Second, the allegations in the Amended Complaint are sufficient to conclude that the County had a rational basis for issuing the Order. The events at issue occurred in the late spring of 2021, during the COVID-19 pandemic, at a time when social distancing and other precautionary measures were still in full effect at the Bethesda Outdoor Pool. In that context, an order temporarily barring an individual who arrived at the pool

outside his scheduled time slot, dipped an item into the pool, and refused to comply with repeated orders to remove it was rationally related to the legitimate governmental purposes of preventing contamination of the pool as well as enforcing pandemic-related rules about timely entry of scheduled pool patrons and promoting safety by requiring compliance with staff directions in the area of the pool. Because Gravatt has failed to allege a plausible equal protection claim against the Individual Defendants, the equal protection components of Counts 1, 3, and 7 will be dismissed.

## IV.     Due Process

In Count 3 of the Amended Complaint, Gravatt alleges that Lattner violated his Fourteenth Amendment right to due process of law when he conducted the Review Meeting and upheld the Order. A procedural due process claim may exist where there had been a deprivation of a protected liberty or property interest by state action. *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 146 (4th Cir. 2009). Thus, in asserting a procedural due process claim, a plaintiff must identify a liberty or property interest subject to protection under the Due Process Clause. In the Amended Complaint, Gravatt references three possible protected interests: his "liberty of freedom from government interference in his swimming and his life," which he also described as his right to "free exercise," the property taxes he has paid, and the money he paid for his pool pass Am. Compl. ¶¶ 49, 71.

The Due Process Clause plainly does not contemplate a liberty interest in being free from "government interference in . . . swimming," *id.* ¶ 49, especially where the facilities in question are owned, administered, and managed by the government. Even assuming that the loss of the use of his pool pass for 90 days constitutes a deprivation of a property interest protected by the Due Process Clause, Gravatt has failed to state a plausible claim for relief.

10

The core protections of due process are notice and an opportunity to be heard. *See Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). However, the Due Process Clause "is flexible and calls for such procedural protections as the particular situation demands," because "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In determining what procedural protects are due, courts must consider: (1) the private interest affected by the deprivation; (2) the risk of an erroneous deprivation through the procedures which were used and the probable value, if any of additional or substitute safeguards; and (3) the government's interest, including in avoiding the burdens associated with substitute or additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

Even viewing the allegations in the light most favorable to Gravatt, the procedures used were constitutionally adequate. When the Order was issued to Gravatt on May 31, 2021 barring him from Montgomery County recreational facilities for 90 days, he was provided with a written notice of the action and the bases for it: "Stalking behavior towards a lifeguard and putting a device in to the pool and refusing to take the device out." Am. Compl. ¶ 13; Order at 1. The Order also provided Gravatt with notice of his right to contest the determination at a Review Meeting. Although the Review Meeting was presumptively scheduled for the next business day, the notice permitted him to request an alternative date, and the meeting was actually held on June 4, 2021. As reflected in the allegations in the Amended Complaint, when Gravatt appeared at the hearing, he was permitted to speak on his own behalf and referenced the pool rules and regulations in arguing that the Order should be rescinded. Am. Compl. ¶ 15. In fact, Gravatt succeeded in convincing Lattner to modify the Order to bar Gravatt from the Bethesda Outdoor Pool only. Thus, Gravatt was provided with notice and an opportunity to be heard before the Order was finalized.

11

In claiming a violation of due process, Gravatt argues that (1) towards the end of the Review Meeting, Lattner "blocked" him from responding to a statement by Smith invoking a pool rule that the instructions of pool staff must be followed at all times; and (2) Lattner received emails relating to the stalking allegation in advance of the hearing that Gravatt had not seen, such that he was not an "unbiased tribunal." *Id.* ¶¶ 45, 48. Gravatt thus effectively argues that the hearing was deficient in that the reviewing authority did not permit him to rebut every statement made by County personnel, and that he was entitled to review in advance of the hearing any documentary evidence that would be considered.

Under the *Mathews* analysis, neither of these actions rendered the hearing constitutionally inadequate. First, the Court finds that the private interest at stake was relatively minor. This is not a case in which a plaintiff was detained or incarcerated, deprived of real property or substantial government benefits, or lost the custody of children. The harm to Gravatt of losing access to a single municipal pool for 90 days, while inconvenient and resulting in the loss of some of the value of his previously purchased pool pass, was relatively minor by due process standards. Thus, the risk of an erroneous deprivation was also relatively minor: even if Gravatt was completely innocent of the charged conduct, he remained free by the terms of the Order to use any other Montgomery County pool at which his pool pass would be accepted. The harm was thus limited to the time and inconvenience of traveling to a more distant Montgomery County pool, or perhaps the limited expense of paying for access to a more conveniently located non-County pool. As for the government interest, given the nature of the rights at stake, the burden on the government of requiring the additional procedural protections of unlimited rebuttal, pre-hearing discovery, and a hearing officer completely unaffiliated with the County is significant.

12

Considered together, the Court finds that for a Disruptive Behavior Order of the type issued to Gravatt, procedural due process did not require the reviewing authority to allow Gravatt to respond to every statement made by Smith, nor did it require pre-hearing discovery of all documents to be considered. Notably, Gravatt has not shown how either of these alleged procedural deficiencies actually impacted the hearing. He does not allege, and there is no basis to conclude, that Lattner based his decision on the point to which he was not permitted to respond: the "absurd" claim that Gravatt had to do whatever he was told. Am. Compl. ¶ 17. Further, where Gravatt asserts that the stalking allegations were dismissed at the hearing, the lack of pre-hearing discovery of the emails relating to that incident could not have affected the result. For these reasons, the Motion will be granted as to Count 3.

## V.     Retaliation

In Counts 1 and 7 of the Amended Complaint, Gravatt alleges that Smith and Headen retaliated against him for exercising his First Amendment right to free speech. Specifically, Gravatt alleges that his protected free speech consisted of statements about cars that he made to a teen-aged female lifeguard that upset her, and possibly statements made to an older female manager several years before. Although not entirely clear, Gravatt appears to assert that the imposition of the Order was in retaliation for such statements.

A plaintiff claiming First Amendment retaliation must demonstrate that: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendants took some action that adversely affected the First Amendment right; and (3) there was a causal relationship between the protected activity and the defendants' conduct. *Davison v. Rose*, 19 F.4th 626, 636-37 (4th Cir. 2021) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). The retaliation claim fails at the first step, because Gravatt has not plausibly alleged that he

engaged in protected First Amendment activity. The First Amendment does not guarantee access to property to engage in speech simply because it is owned by the government. *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981). Reasonable time, place, and manner regulations are permissible. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). On government-owned property which is not a traditional forum for public expressive activity, the government "may reserve the forum for its intended purposes . . . so long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* Where, as here, the County controls access to the pool through the issuance of paid seasonal pool passes, and where there exists no longstanding tradition of outdoor pools as fora for expressive activities, the government may impose reasonable, viewpoint-neutral restrictions on speech. *See Presnick v. Delaney*, 36 F. App'x 5, 6 (2d Cir. 2002). In this instance, the pool rules include a provision stating that "Socializing with or distracting the pool staff is prohibited." Pool Rules at 3, Mot. Dismiss Ex. 3, ECF No. 32. Such a rule is reasonable in light of the need for safety at a public pool.

Here, the alleged free speech consists of statements by Gravatt to female pool employees which, regardless of the content, violated this pool rule, particularly where Gravatt does not dispute the County's claim that the pool employees had "become upset" over his statements. Am. Compl. ¶ 82. Where Gravatt has not plausibly alleged that his statements to the female pool employees constituted protected First Amendment activity, he has not stated a valid claim of retaliation for engaging in First Amendment Activity. *Davison*, 19 F.4th at 637. Accordingly, the First Amendment components of Counts 1 and 7 will be dismissed.

## VI. Conspiracy for Deprivation of Rights

Count 6 alleges a conspiracy between Headen and Smith under 42 U.S.C. § 1985(3) to deprive Gravatt of "equal protection of the laws and thereby to deprive him of free exercise or privilege to use the Bethesda Outdoor Pool." Am. Compl. ¶ 70. In opposing the Motion, Gravatt clarifies that he actually intended for this count to assert a claim of a conspiracy to deprive him of constitutional rights under § 1983. Because the Court has already concluded that the equal protection claims against the Individual Defendants will be dismissed because there are no allegations supporting an equal protection violation, it follows that Count 6 will also be dismissed. *See supra* part III.

## VII. Qualified Immunity

In the alternative, the Individual Defendants seek dismissal of the § 1983 claims against them on the grounds that they are entitled to qualified immunity. The doctrine of qualified immunity applies to municipal officers sued in their personal capacity for damages just as it applies to state officers so sued. *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 468 (4th Cir. 2013). The test to determine whether a government official is entitled to qualified immunity consists of two parts which may be considered in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The first part is to determine whether the allegations underlying the claim, if true, would establish a violation of a federal right. *Davison*, 19 F.4th at 640. The second part is to consider whether the constitutional right was a "clearly established" right of which "a reasonable person would have known" at the time. *Id.* As discussed above, the allegations do not support a plausible claim of a violation of the Fourteenth Amendment or the First Amendment. *See supra* parts III-V.

15

Even if Gravatt's allegations could establish a constitutional violation, it was not clearly established at the time of the events in question that any such violation was one of which a reasonable person would have known. For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A case of controlling authority or a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful" can show that a right is clearly established. *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *see Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014); *al-Kidd*, 563 U.S. at 742. Gravatt has identified no such controlling authority or consensus of persuasive authority demonstrating that there was a clearly established right, under the Equal Protection Clause, the Due Process Clause, or the First Amendment, to be free from the kind of Disruptive Behavior Order imposed and upheld in this case, under the same or similar circumstances at issue here. The Court is aware of two cases, neither of which is controlling authority, involving a similar fact pattern in which a private person challenged the constitutionality of his ban from a public swimming pool. In the first, *Presnick v. Delaney*, 36 F. App'x 5 (2d Cir. 2002), the United States Court of Appeals for the Second Circuit held in an unpublished opinion that a ban on an individual who was seeking to collect signatures in support of his election campaign from patrons at a public pool did not violate the individual's rights to free speech, due process, or equal protection. *Id.* at 6. In the second, *Kennedy v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010), the United States Court of Appeals for the Sixth Circuit held that an individual alleged to have leered at children and who was banned from all city recreation department facilities without a hearing had a protected liberty interest in remaining in "a public place of his choice" and that he was thus entitled to due process before he could be deprived of that right. *Id.* at 336, 338. Unlike in *Kennedy*, however, Gravatt received a hearing,

16

and there is nothing in *Kennedy* that establishes that the process followed in Gravatt's hearing was constitutionally inadequate. *See id.* The Court therefore finds that there was no clearly established law at the time of this incident which would cause a reasonable officer to understand that either the issuance of the Order or the conduct of the Review Meeting violated equal protection, due process, or the First Amendment. Therefore, the Court finds that the Individual Defendants are entitled to qualified immunity on the § 1983 claims against them in Counts 1, 3, and 7 and will dismiss those claims on this alternative basis as well.

### VIII. Montgomery County Code § 32-19C

In Count 11, Gravatt asserts a facial challenge to Montgomery County Code § 32-19C, which bars "disruptive behavior" at Montgomery County public facilities and sets forth the procedure for issuing a Disruptive Behavior Order and for the provision of a hearing on such an order. *Id.* In support of this claim, Gravatt alleges that the procedures provided by the statute fail "to meet the minimum standards of procedural due process of law" under the Fourteenth Amendment, and that the imposition of such orders violates equal protection of the law. Am. Compl. ¶¶ 111, 118. To succeed on a facial constitutional challenge to a law, a plaintiff "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). As discussed above, Gravatt has failed to allege facts sufficient to support the conclusion that application of section 32-19C violated due process or equal protection rights in his own case. *See supra* parts III-IV. He therefore has not stated a plausible facial constitutional challenge to section 32-19C. Count 11 will be dismissed.

### IX. State Law Claims

When a federal district court "has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over remaining state law claims.

17

28 U.S.C. § 1367(c)(3) (2018). Here, the Court has dismissed all federal clams in the Amended Complaint. Where this case remains at the early stages of litigation, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and will dismiss the remainder of this case for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss will be GRANTED. Counts 1, 3, 6, 7, 8, 10, and 11 of the Amended Complaint will be DISMISSED, and Counts 2, 4, 5, and 9 will be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. A separate Order shall issue.

Date: March 3, 2023

THEODORE D. CHUANG
United States District Judge